GEORGE A. SMOCK, complainant-appellant,

*v.*

BUCHANAN & SMOCK LUMBER COMPANY and HARRY W. SMOCK, defendants-respondents.

GEORGE A. SMOCK, complainant-respondent,

*v.*

BUCHANAN & SMOCK LUMBER COMPANY and HARRY W. SMOCK, defendants-appellants.

[Argued November 30th, 1923.   Decided May 19th, 1924.]

1. The manager of the mill department of a private corporation, of which he is a stockholder and director, will not be compelled, at the instance of another stockholder and former president, to further account for petty cash received and disbursed by such manager in his department, when it appears that the bookkeeping system employed by him had been in force for many years in his department, was well known to the complainant (then president of the company) and acquiesced in by him during all the years of its existence, and its accuracy never questioned until shortly prior to the time when the complainant was removed from his office as president by resolution of the board of directors, and when it further appears that, so far as was possible to ascertain, in view of the nature of the system, all moneys passing through the hands of such manager had been accounted for by him.

2. The president of a private corporation, organized under our General Corporation act (2 *Comp. Stat. p. 1595*), although elected for a fixed term, may be removed by the board of directors for adequate cause.

3. The president of a corporation is not entitled to take for his own use from the company's treasury the salary of the absent treasurer (in addition to his own fixed salary as president), without the knowledge or consent of any of the other directors or officers of the company, and such taking constitutes adequate cause for his removal from his office as president by the board of directors, even though he had voluntarily performed part of the duties of the treasurer during his temporary absence, as he had done before in such circumstances, but always theretofore without extra compensation.

On appeals from a decree of the court of chancery advised by Vice-Chancellor Foster.

*Mr. Ralph E. Lum* (*Messrs. Lum, Tamblyn & Colyer,* on the brief), for the complainant.

*Mr. John S. Applegate & Son,* for the defendants.

The opinion of the court was delivered by

TRENCHARD, J.

This bill was filed by a stockholder and former president of the defendant company to compel an accounting by both the individual and corporate defendants. Answers were filed denying the allegations of the bill, and setting up a counter-claim in the nature of a cross-action for an accounting by the complainant. By consent, the matters in dispute were referred to a special master to take and state an account. The master filed his report, and both complainant and defendants filed exceptions to certain parts thereof as hereinafter more particularly stated, which exceptions were overruled by the vice-chancellor, and both parties appealed.

The complainant's exception is to that part of the master's report which finds, in effect, that the defendant Harry W. Smock, has not misappropriated nor failed to account for any money belonging to the defendant company.

It appears that the defendant lumber company is a corporation organized in 1900 under our General Corporation act (*2 Comp. Stat. p. 1595*), and in business at Asbury Park; that the complainant was president thereof from 1913 to August, 1918, and had been an officer thereof since the organization in 1900; that the only other stockholders, directors or officers of the company were his brother, the defendant Harry W. Smock, and W. Harvey Jones.

The work of the company for convenient operation was divided into three departments, viz., the mill department, at some little distance from the main department, in charge of Harry W. Smock; the finance department, in charge of

Jones, and the lumber and main department, in charge of the complainant, who was also in general charge of the book-keeping of the company.

The defendant Smock had in his department a petty cash fund produced from daily cash sales of small amounts. From this Smock paid the expenses of trips of employes made to estimate on contracts, &c. The moneys making up this fund were kept in a desk, and when they amounted to any considerable sum they were placed in a box in the safe, known as the reserve fund, and when this reserve fund amounted to $100 or thereabouts, it was transferred to the main department in charge of the complainant. The petty cash account was kept in small books, and the only entry of money transferred from the reserve fund to the main department was made in the books of the latter department.

It was the moneys of this petty cash fund and so-called reserve fund that the complainant contended had been misappropriated by the defendant Smock, and for which he should further account.

With respect thereto the special master found: "I am satisfied that every dollar which passed through the hands of the defendant Harry W. Smock, as manager of the mill department, was expended in the interest of the company, and that no recovery should be had by the complainant against said defendant."

In that conclusion the vice-chancellor concurred. He pointed out accurately that the evidence showed that the book-keeping system employed by the defendant Smock had been in force for many years, was known to the complainant and acquiesced in by him, if not expressly sanctioned, during all the years of its existence, and its accuracy never questioned until shortly prior to the time when the complainant was removed from his office of president of the company by resolution of the board of directors, and that so far as it was possible to ascertain from the nature of the system, all moneys passing through the hands of the defendant Smock had been accounted for by him. Accordingly, the vice-chancellor overruled the exception, and we think rightly.

It remains to consider the questions raised by the defendants' appeal.

The complainant claimed from the defendant corporation, salary as president from August 8th, 1918, the date of his removal from office, to January 15th, 1919, the date of the annual meeting, and the master reported in favor thereof. The defendants excepted thereto, and appealed from the order of the vice-chancellor overruling such exception.

It is admitted that the complainant was elected president of the company for one year at a salary of $75 a week, his term expiring January 15th, 1919. He was removed from such office August 8th, 1918, by resolution of the board of directors.

Of course, if he was lawfully removed from his office as president he was not thereafter entitled to the salary claimed.

We think that he was lawfully removed. The president of a private corporation organized under our General Corporation act, although elected for a fixed term, may be removed by the board of directors for adequate cause. See *In re Griffing Iron Co., 63 N. J. Law 168, 175.* The statute recognizes a power of removal (section 15) and such power is indeed inherent.

But the complainant, under this head, contends that there was no cause for his removal. We think there was adequate cause.

It appears that in 1918, W. Harvey Jones, treasurer of the defendant company, with the consent of the board of directors, discontinued, during the early summer months, his active supervision of the affairs of his department, as it had been agreed that he might do at the time he entered the company, for the purpose of attending to his outside private interests; that the complainant, during such absence, voluntarily performed some part of Mr. Jones' duties, and, conceiving that he was entitled to remuneration in addition to what he was already receiving as president of the company, which was $75 a week, he took for his own use, without the knowledge or consent of any of the other directors or officers, $40 a week additional (more than one-half of the salary of

the treasurer), although it appears that at other times he had performed Mr. Jones' work in the latter's absence under similar circumstances, but always without any compensation. The resolution of the board of directors removing the complainant shows that he was removed because of such misappropriation of the funds of the company.

Now, we think that the president was not entitled to take for his own use from the company's treasury the salary of the absent treasurer (in addition to his own fixed salary as president), without the knowledge or consent of any of the other directors or officers of the company, and that such taking constituted adequate cause for his removal from his office of president by the board of directors, even though he had voluntarily performed part of the duties of the treasurer during his temporary absence, as he had done before in such circumstances, but always theretofore without extra compensation.

Since the complainant was lawfully removed from his office as president, he was no longer entitled to the salary, and we think that the learned vice-chancellor erred in overruling the exception directed to the allowance of that item.

There was also included in complainant's demand for an accounting an item of $469.30, which he claimed on account of dividends declared by the defendant corporation on complainant's stock in the year 1918. This item is admitted by the defendant company, but it contends that it should be permitted to offset against that sum the sum of $400 representing the moneys taken by complainant from the company's treasury as salary for extra services rendered by reason of the absence of the treasurer heretofore referred to. This claim of the defendant was included in its counter-claim, and was disallowed by the master, and the exception to such disallowance was overruled by the vice-chancellor. Since, as we have said, the president had no legal right to the $400, the defendant company was entitled to offset that sum against the amount claimed as dividends, and hence the exception to the refusal to permit that to be done was erroneously overruled.

The result is that the decree below must be modified in accordance with the views herein expressed, and as so modified will be affirmed. In this court no costs will be awarded either party as against the other.

*For affirmance*—None.

*For reversal*—None.

*For modification* — THE CHIEF - JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARD NER, CLARK—9.